Good morning. May I proceed? Good morning, Your Honors. Florence Brummer on behalf of the appellant, Mr. Taylor. I'm from Andrews Rosenquist's office. Chapter 13 bankruptcy can be used to adjust debts, and that is exactly what Mr. Taylor was attempting to do. And the criminal liability that he was assessed in this case is not proper. First of all, he was assessed liability for failure to disclose bankruptcies and previous petitions. There the government has failed to prove that it was material or that Mr. Taylor had intent to do for the failure to disclose those. Second, he was also assessed criminal liability. Oh, let me stop you there. Sure. There's a James Bond novel that talks about once being happenstance, twice coincidence, three times enemy action. It wasn't just once or twice that defendant omitted listings from his bankruptcy petitions. That's true. Can't you infer from that that, hmm, this isn't just an accident. This is enemy action. This is somebody that's intending to leave things off the form. Well, it's up to the government to show that there is intent. And they never showed that. In fact — I just posed the question to you. Can't somebody reasonably infer from the fact that the same omissions occur over and over again that it's not an accident that the previous filings aren't listed? Not even the same omissions. It's not like he's copying a form and he missed it and he keeps missing it. It changes over time. But what's consistent is a failure to list all the prior filings. That's true. Why can't that be inference or basis to infer intent? Maybe it can be used to infer intent. But the problem is it doesn't show that there's — even if you get past the intent, it doesn't show that it's material because nothing happens with it. Well, perhaps nothing happened past tense. But it's not like the form tells people to list things for the heck of it. The information sought is presumably sought because somebody else is interested in it. And in this case, if you decide to leave some things off, it may be because you don't want somebody else to know what you're leaving off. Well, it has to be a material. And it wasn't. It didn't come. What is more material than a person repeatedly, I think — is it five or six times in this case? It was five. The sixth one popped up later, I take it. The sixth one he filed. Five separate times he files, takes advantage of the automatic stay, defeats the efforts of creditors, dismisses the petition or doesn't file the things necessary to keep the petition alive, gets involved in other financial transactions. When creditors come after him again, files again, and he does this five separate times. Why is that not material? Well, as you know, Judge Hawkins, that in the Millwick case, which you had authored the opinion on, that — Actually, I think my friend from Montana wrote that. — that the filing of — knowing that the filing stays a landlord claim is not enough to prove the specific intent. There has to be more than that. And the government does not show that. They do make inferences that because bankruptcies were previously admitted from the petition and because there was a stay, therefore, there's criminal liability. But it doesn't reach the point of where Taylor should be assessed the criminal liability. For instance, on the — when you're — if you're filling out and, as the court knows, all of Taylor's previous bankruptcies were dismissed. And the court also knows that his name was correct on the petition. His Social Security number was correct. This is not like the Lindholm case where Lindholm would modify his name a little bit and hope nobody would catch him. Also, the government relies on Lindholm, but that was a Chapter 7 case. And with Chapter 7, you cannot file more than one Chapter 7. Chapter 13, you actually can. Sure, but, you know, it is very material to the administration of the bankruptcy to know if there have been prior bankruptcies filed. A judge or the trustee has to assess whether it's an abusive filing. They have to assess what debts have been adjusted, if any, in the prior Chapter 13 filings. I don't quite understand why you say it's immaterial to omit knowledge of past bankruptcies, particularly, I guess, saying that, well, they could look it up. Why isn't it material right from the beginning of the bankruptcy to know the history of filings? It may be material to whether he is able to file a subsequent bankruptcy, but it's not material to whether he should be assessed criminal liability. And that is a very... Well, the materiality depends upon whether somebody might be influenced by it. Criminality comes with the establishment of material. It's not a question of whether we decide this is important enough to punish criminally. The issue is whether it's material, and I'm kind of baffled by the notion that U.S. trustee, looking at everything that's filed, can't reasonably rely on what's on the form, the possibility that, gee, if you check out his name, you're going to discover this form is false, so it can't be material. I mean, there are lots of things you can check out and disprove. That doesn't mean the information is not material. And maybe that means his bankruptcy should be dismissed, but it doesn't mean... Well, it means he's made a false statement. It means there's an omission. That's the criminal prosecution. I really don't think the argument is pertinent as to whether or not we decide this is important enough to punish criminally. The standard of materiality doesn't turn on importance. It turns on whether it can influence somebody's behavior. In this case, the bankruptcies were dismissed. It never stopped the creditors from being able to pursue against Mr. Taylor. And, again, there's not a requirement or a restriction against permitting someone from filing multiple Chapter 13s. So in your version, somebody can file every single day in order to make sure that no creditor can ever enforce anything against him, not reveal the fact he's filing every single day and hope that it takes the U.S. trustee a long time to figure out that this guy is abusing the system like that. I don't think I'd go so far as every single day, but we don't have to. What's the reason, difference between that and your client's situation? Sure. My client's situation is that it's pretty much a yearly filing. He files yearly, and then he either voluntarily dismisses or the bankruptcy court dismisses it. Does he have it on a calendar that he, you know, file your taxes, file a new Chapter 13? No, I don't think that's the case. I don't want to be facetious, but it actually this pattern of repeated filing is fairly disturbing. And as you remember- Is there a case that says that we think debtors can file as often as they want without any ramifications? There's not a case that says that. But, again, there has to be a showing that there's an intent to defraud and that it's material. And neither of that shows that. For instance, Mr. Taylor had Mr. Hirsch's counsel on the fifth bankruptcy. And so he relied on counsel to help him prepare his schedule, to help him prepare any amendments. So he's not hiding out trying to defraud anything. He's putting it out there. He may not be the smartest person- So the fact that he hires an attorney is a cold comfort if he's not telling the attorney everything. Well, the information that he was saying, one of the pieces of information that he was saying that he wasn't told was the information regarding the airplane and the bank account. And as the Court recalls with that, even at the district court level, the district court judge, the government, and Mr. Taylor's current attorney could not agree on whether that was something that needed to be disclosed. Finally, the district court judge said, well, since there was an amendment, it should have been on the amendment. He wasn't required to do an amendment, but since there was an amendment, it should have been on that. So there's a confusion about what should be disclosed. But your client's decision to tell, not to tell the lawyer about all this money he comes into or the assets he comes into the day after filing, I mean, the date coincidence is a little hard to miss. And the notion that you don't go in and tell the lawyer, you're presumably trying to take legal advice from the lawyer. Instead, your client decides not to tell the lawyer about all these assets he suddenly comes into. Can't that be the basis to infer, gee, this isn't all an accident or unfortunate coincidence? Your client's simply not trying to come clean. There is nothing in the bankruptcy statute that required him to disclose it. Did he ever say the reason he didn't tell his lawyer about it was that he knew the bankruptcy statute didn't require it? I don't recall that in the record, but the thing is the government needs to prove that there's fraud, and Mr. Taylor doesn't need to prove that there wasn't fraud. The government needed to prove their case. Instead, what they did was say there were stays that were caused by these bankruptcy filings, so therefore he's criminally liable. And the stays, again, were not material. The stays were brief, as soon as... Weren't they the reason your client was filing in the first place? It's hard to act like they don't count for anything because it's the only reason your client was filing all these petitions, to get the benefit of the stays and to fend off creditors for periods of time. Sure. Including the IRS, which has apparently fended off forever. Kind of disturbing for those of us who depend on tax collections for our salaries, but the IRS apparently stopped trying to collect the money. Sure, I understand what you're saying, but everybody who files bankruptcy is using the benefit of the stay. That's the whole purpose of filing the bankruptcy. You're trying to fend off your creditors. But you're trying to tell us it doesn't matter that he lies when he gets the stay because the stay isn't material, and that can't be the case because it's the whole motivation for your client to file the petition in the first place. So how is it immaterial if it's the reason your client's acting the way he's acting? Well, the... And he's not fending off his creditors for sport. He's doing it because he wants to keep them from collecting. That, doesn't that make it material? No, because there was dismissals, and everybody could have collected. And I think showing the IRS doesn't come after him for collection shows that Mr. Taylor never had the money to begin with to be able to pay the debts. I think what the government is saying is Mr. Taylor files and eventually the IRS gives up. We've all been here a long time. The IRS doesn't just give up and go away. There's something else going on. He doesn't have the money, and they're making the inference that because the government, because the IRS doesn't collect, therefore he's misrepresented so that the IRS just throws up their hands and give up. You've chosen to spend the bulk of your time on materiality. I have. Are there any other issues that you'd like to address in the two-and-a-half minutes you have left? Yes. Mr. Lal was a very important witness for the government. Later, his testimony was found to be false. He was not the owner of the property. This comes out at the restitution hearing. Everything that Mr. Lal says should be called into – should be held suspect, and the Court should reverse on that. Also, regarding the sentencing, it's been briefed, and the issue with that is that he was – received six points for two different sentences. One was before the 15-year period, so he should have only received the three criminal points, so he was over-sentenced. If it is okay with the Court, I'd like to reserve my remaining minute-and-a-half. Sure. Okay, thank you. Thank you. We'll hear from the government at this time. Good morning. May it please the Court. My name is John Lopez. I represent the United States in this matter. The government agrees with the Court's implication when questioning the appellant's attorney about materiality and the materiality of the omissions in the bankruptcy fraud, so, therefore, I won't spend much time on that. However, the issue that is to be considered, which was omitted in my opponent's case, determining fraudulent intent in an omission from a bankruptcy petition, in this case with respect to Counts 1 through 3, the Court, as set forth in Lindholm, is free to examine the totality of the evidence when discerning fraudulent intent. So although Lindholm was distinguishable in the sense that the debtor defended in that case made minor modifications to his name or social security number in addition to omitting prior bankruptcies, in that case, the Court, this Court, emphasized that there were other indicia of fraudulent intent, for example, the fact that the debtor in that case, as in this case, was capable of paying off his debts, meeting his obligations, which he was seeking protection from through the bankruptcy. In addition, in that case, directly on point, the debtor defendant appeared to be using bankruptcy stays in order to live rent-free at the expense of landlord creditors. So in that respect, the government submits the jury found, beyond a reasonable doubt, that there was not only materiality but fraudulent intent with respect to Count 1 and 3, the false declarations. Can I ask you about Counts 4 and 6? Are they premised upon a duty on Taylor's court to amend his filings and report after acquired property? Your Honor, the other question is can we start with a yes or no? Yes, Your Honor. What's the basis for the duty underlying Counts 4 and 6 to report after acquired property? Yes, Your Honor. There are two bases that the government has urged the Court to accept, and the government submits that either basis, the Court could find a duty on upon either basis. I'll start with the district court's ruling. The government had urged the district court to find an affirmative duty based upon statutory sections of the Bankruptcy Code, namely 11 U.S.C. 541a7 and 11 U.S.C. 1306, which clearly and unequivocally define the property of a Chapter 13 bankruptcy state to include all property that the state acquires after commencement of the case, before dismissal, or before a case has been transferred to another chapter of the Bankruptcy Code. How do you square that with Bankruptcy Rule 1007 and Section 541a5? Yes, Your Honor. And that's the argument that the defense made front and center was that Rule 1007h, which limits on its face disclosure of after-acquired assets to 541a5, which involves life insurance proceeds, divorce proceeds, inheritance, inheritance, the government submits that that disclosure requirement is not exclusive, that there is perhaps a reasonable explanation for why 541a5 assets were isolated. Namely, those truly are the sort of assets that the debtor themselves likely would not even contemplate coming into possession of. But Bankruptcy Rule 1007 is the requirement, states the requirement, doesn't it, for the disclosure of after-acquired property? In terms of procedural rules, that's correct, Your Honor. There's no other rule that defines, describes, or delineates this obligation. That's correct in the Bankruptcy Procedural Rules. Am I correct? That's correct, Your Honor. It makes specific reference to 541a5, which limits that to property which is not an issue in this appeal, right? That's correct, Your Honor. With respect to that issue ---- How do we get to criminal liability when it's unclear or perhaps at best ambiguous reading the rule against 11 U.S.C. 541 as to whether there even is a duty to disclose other than inheritance, divorce, whatever, after-acquired property? How do we get to criminal liability? Well, Your Honor, the purpose of bankruptcy, as a court is aware and any debtor is aware, is a full disclosure of the assets that the debtor holds and, depending upon the chapter, an attempt to satisfy lawful debts to creditors. Criminal liability, in large part, is premised upon the notion of notice. And if the very rule that describes how a bankruptcy petitioner is to fulfill his or her duty to report after-acquired property doesn't require the disclosure of the very property at issue in Counts 4 and 6, how can they stand? Well, Your Honor, the district court made a separate ruling independent of an affirmative duty created by the statute. And in this particular case, this case is distinguishable from a situation in which a debtor acquires property postpetition after they filed schedules, but never files an amended schedule. In this case, as the district court held and the government urges the court to find a duty, perhaps on an alternative basis, that is that with respect to Count 4, the defendant opened a bank account, acquired assets, ran them through the account two weeks before he filed his first schedules. The bankruptcy schedules do not place a time limitation on their face relating back to the date that the petition was filed. And the government, as the district court held, urges the court to make a finding if it's not inclined to find a statutory duty based upon 541A7 and 1306, at least in a circumstance like this where a debtor files a bankruptcy petition the day after acquires assets, or at least it's revealed that he was holding assets, not disclosed in subsequent filings of schedules, that that is concealment, that at a minimum, the date upon which the defendant files their debt of schedules and liabilities, they must include property they hold at that time. That pertains to Count 4. With respect to Count 6 — Well, let me impose on that, because I've struggled with that a little bit. I did not practice bankruptcy law, but I had this general understanding that there is this process. You file on a given date, and you follow up filing detailed schedules. And the question becomes, what's the effective date or the information date for those schedules? I take it your argument really has to be the debtor is obligated to bring those current to the date of filing of the schedule. But is it so sure that a debtor couldn't fairly understand that these are schedules meant to complete his original filing so that the information contained there is really as of the date of filing? Because you don't really know what things are when you actually get into the courthouse. Everything's changed a little bit. So you're really — you're giving slightly obsolete information, but could in good faith be trying to respond to, what was my financial condition as of the date of filing? Now, why is that out of bounds? Why is it improper for a defendant to do that? Well, Your Honor, with respect to this case, and I'll address the amended filing, amended schedule issue. I'll just stop here. My understanding of Count 4 is that it's based on the first filing, the first, the May — The initial schedule, is your correct? The initial schedule, right. I guess it's June 16 he's filed the schedule. So it's not — it doesn't pick up what the lawyer subsequently filed with the amended filing. This is focused on what he filed at the beginning of the proceeding. That's correct, Your Honor. The government would submit that the fact that the defendant had substantial assets which were moved into the account the day after he filed his petition, that these were assets that the jury could infer and did, were in his possession at the time he filed his petition, that these business transactions were being contemplated, being negotiated, even before he filed his petition. And therefore, there is concealment in this case. With respect to Count 6 — Count 4 wasn't concealment, though. Count 6 is concealment. Count 4 is false declaration. Correct. Correct, Your Honor. That's why I asked the question. Is it so clear that what's filed on June 16 is a false declaration? If that is fairly intended or reasonably understood to be a statement of condition as of the date of your initial Chapter 13 filing, it was apparently correct as of the date of the Chapter 13 filing. It just omitted what he managed to do the next day. That is — that's correct, Your Honor, if there was no duty to declare that. So that's what I'm trying to focus on. What is it that makes it clear that the person filing those schedules is supposed to file information as of the date of the schedule as opposed to the date of the filing? Well, the schedules themselves, the document in which a debtor places information, enters information about their assets and liabilities, does not place a time limitation. It simply says to list all of your holdings. At the time that the defendant filed this schedule, he was in possession of this bank account and the assets contained therein on the date that he filled that out. You know, I think that you're really arguing for some rather profound changes in understanding of bankruptcy law for the practitioners. If you adopt your first theory, which is after acquired property duties, that's thanks for — and criminalizes activity for now thousands or millions of debtors who are trying to fill out these schedules. By the same token, what the Bankruptcy Code says is that as of the filing of the bankruptcy, the commencement of the case creates the bankruptcy estate. And so now you're saying the schedules don't relate back to the filing when everybody's understanding is they do. Now, there may be a different theory of concealment, but I'm not sure you have one here. And I know you're trying to keep it to the facts of this case, but it really has some pretty broad implications under both your theories for the practice of bankruptcy law, it seems to me. Your Honor, with respect to section 541A7 and 1306A, the government — it wouldn't change bankruptcy law at all. In fact, the government cited, I believe, ten cases to this Court which make clear that a Chapter 13 debtor is obligated to disclose assets acquired pursuant to section 541A7 and 1306A, assets acquired postpetition, that there is an affirmative duty — every case examining this issue from a number of circuits which the government presented to the Court for its consideration have found that there is that affirmative duty in the bankruptcy context. This Court's holding would not change bankruptcy law at all. With respect to criminal liability, the government cited the Tenth Circuit case of Messner for the — well, essentially to refute the defendant's argument that after acquired assets under criminal sanction must only be disclosed if it's pursuant to Rule 1007H, which cross-references 541A5. In that case, the Tenth Circuit found that there was criminal liability to — for failure to disclose or conceal assets pursuant to 541A6. That's not referenced in Rule 1007H. Perhaps this Court won't find that Court persuasive. It's not controlling. But the government cited it to this Court in support of its contention and the proposition that the duty to disclose after acquired assets is not limited for criminal sanction purposes to 541A5. Your theories are completely inconsistent with each other, right? Either it's after acquired property, meaning the duty to disclose is of the filing date, or you're saying the duty to disclose happens at the time of schedules. Your Honor, the government urged its first theory, the statutory theory that 541A7 and 1306A create an affirmative duty to a debtor as is set forth in virtually every bankruptcy case interpreting those statutes. There is an affirmative duty. The district court held on an alternative basis. Yeah. I understand that. But, I mean, if you're talking about duties in bankruptcy and notice as to what you ought to do, how can you maintain alternative theories that have different disclosure dates? I mean, essentially, as I look at it, I realize there might be a subtle difference. The theories are inconsistent. And if it's inconsistent, then the rule of lenity would say that's not sufficient notice for criminal liability, right? Your Honor, the district court made its ruling on an alternative basis, which is that at a minimum, at a minimum, if this Court found that there was not a statutory basis, at a minimum, when a defendant makes a filing listing their assets and liabilities, at a minimum, when they make that representation to the Court and they are aware that they're in possession of assets which they fail to disclose, especially in a case like this where it exudes fraudulent intent in a number of manners, that at a minimum, when a defendant makes that representation to the Court, that they have committed concealment or false declaration. It's an argument in the alternative, Your Honor. You're almost out of time. Do you want to address the argument about the two, three-point enhancement based on prior incarceration? Yes, Your Honor. As the government set forth in its brief, the defendant had two prior convictions. He was assessed criminal liability for the Island County, Washington conviction. The documents, and these were old offenses, and the documentation was somewhat limited to simply a phase sheet indicating when probation was revoked, when a sentence was issued, and when the release date was. And that's set forth in the pre-sentence agreement. There's no dispute about the dates which the parties have offered for analysis. In the Island County conviction, the defendant's probation was revoked in August of 1983. The Snohomish County conviction, which the defendant contends he should not have been assessed points, probation was revoked a couple of weeks later. In the Snohomish County conviction, the defendant's probation was revoked in November of 1984. The records indicate that the defendant was released on the same date, January 6th of 1987, for both convictions. Before the expiration of the Island County sentence, right? That is correct, Your Honor. Correct. Yes, that's correct. So why isn't it one incarceration instead of two? Well, because the records reflect, Your Honor, that he was incarcerated for two particular He was serving them consecutively? Yes, Your Honor. He was serving them consecutively, and the issue is when he was released before the first one expires. He would be released before the first one expires. However, the documents indicate that he was sentenced and imprisoned on the second conviction as well. The government concedes there is some ambiguity here because the records do not indicate when one sentence began and ended and another began. Whose burden is that? It's the burden of the government, Your Honor, by preponderance of the evidence. And the government's argument is in essence that he was imprisoned on two sentences, and either way, either argument would have to hinge on him serving less than a full sentence on either conviction. The defendant's argument is, would have to be that he was sentenced first in the Snohomish County case, was sentenced to two years, but served six weeks before he began his Island County sentence. The government's position is that he was sentenced first in the Island County case, served perhaps two years. So we don't know that from the record, right? That's correct, Your Honor. Okay. Thank you. We've taken you over your time. Thank you for your argument and rebuttal. Counsel? Your Honors, Mr. Taylor was found criminally liable and jailed for his failure to pay debts and the creditor's failures to go after him and collect the debts after the bankruptcy petitions were dismissed. Each and every argument that the government made today is addressed in our opening brief and reply brief. And specifically, I'd ask the court to look at the Messner case. The government's reliance upon that is misplaced. And if the court has no other questions, I would rest. We have no other questions. Thank you very much. Thank both counsel for their arguments. The case just argued will be submitted for decision.
judges: Hawkins, Thomas, Clifton